UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| ALI M. GILBERTSON, | ) | CIV. 12-4176-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION |
| vs. | ) | AND ORDER REVERSING AND |
| | ) | REMANDING DECISION OF |
| CAROLYN W. COLVIN, | ) | COMMISSIONER |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff, Ali M. Gilbertson, seeks review of the Commissioner of Social

Security's decision denying her claim for disability insurance benefits.[1] The

Commissioner opposes the motion and requests that the court affirm the

decision. The court reverses and remands.

**PROCEDURAL HISTORY**

Gilbertson applied for disability insurance benefits on August 6, 2008,

alleging disability beginning September 5, 2006. AR 172.[2] Her application was

denied at the administrative level, and she requested a hearing before an

Administrative Law Judge (ALJ). AR 107. Following a hearing held on

---

[1] Under Fed. R. Civ. P. 25(d), Carolyn W. Colvin is automatically substituted for Michael J. Astrue. This action survives the substitution. 42 U.S.C. § 405(g).

[2] All citations to "AR" refer to the appropriate page of the administrative record.

March 11, 2011, the ALJ concluded that Gilbertson was not entitled to
benefits. AR 19. The Appeals Council denied Gilbertson's request to review the
decision of the ALJ. AR 1-6. Subsequently, Gilbertson appealed to this court to
review the decision of the Commissioner denying her benefits. Docket 1.

**FACTS**

Gilbertson was born on January 30, 1961. Upon completing high school,
she entered the military, where she served six years on active duty with the
Army, followed by sixteen years in the Air National Guard. AR 58. In the Army,
Gilbertson was a field medic. *Id.* For nine years, Gilbertson worked as a
cardiovascular technician at Sioux Valley Hospital specializing in
electrophysiology studies, and then for approximately nine years she was a lab
technician at Avera McKennan Hospital. AR 59. Gilbertson has one daughter
from her first marriage.

On March 7, 2005, Gilbertson suffered an injury at work that resulted in
a herniated disk in her neck. After an epidural block treatment failed to
manage her pain, Gilbertson underwent surgery on her neck to remove the
herniated disk and fuse the vertebrae on either side. AR 906. Following this
procedure, Gilbertson underwent physical therapy and was able to return to
work on a limited basis. Shortly after her surgery, Gilbertson began to
experience increased difficulty swallowing, and eventually she underwent a
second surgery on September 6, 2006, to remove the plate and screws inserted

2

in her neck. AR 391-92. During the second surgery, a nerve was damaged, causing Gilbertson to suffer from Horner's syndrome.[3] AR 487.

After her second neck surgery, Gilbertson underwent more physical therapy. She reported increased pain in her neck after short periods of exertion, and headaches and difficulty reading stemming from her Horner's syndrome. AR 66-67. Gilbertson returned to work on a limited basis in Avera's communications center with various accommodations for her condition, but she reported being unable to work more than three hours a day without intolerable neck pain. AR 62. Gilbertson received a workers' compensation settlement and has not worked since June of 2009.

Gilbertson has also received treatment for depression stemming from her injury, marital problems, financial trouble, and a gambling addiction. In the past, Gilbertson struggled with alcoholism. Additionally, Gilbertson underwent a sex change operation from male to female in June of 2009, which transition is not the basis of her disability claim. Gilbertson previously filed a claim for social security disability benefits based on her neck injury, which was denied on November 6, 2007, and was never appealed. AR 100.

------------------

[3] Horner's syndrome is a rare disorder resulting from damage to certain nerves that travel from the brain to the eyes and face. Horner's syndrome usually affects only one side of the face. Typical symptoms include a drooping eyelid, decreased pupil size and decreased sweating on the affected side of the face. Mayo Clinic, http://www.mayoclinic.org/diseases-conditions/horner-syndrome/basics/definition/con-20034650 (last visited February 12, 2014).

## ALJ DECISION

After a hearing in which Gilbertson was represented by counsel, the ALJ issued an unfavorable decision. Initially, the ALJ treated Gilbertson's claim alleging disability beginning on September 5, 2006, as an implied request to reopen the prior initial denial dated November 6, 2007. AR 22. The ALJ determined that the new evidence submitted with Gilbertson's current claim was cumulative and did not constitute new and material evidence to reopen her prior claim. Therefore, the ALJ limited Gilbertson's current claim to November 6, 2007, at the earliest, although relevant evidence from before that date was considered. AR 22-23.

In evaluating Gilbertson's claim, the ALJ applied the five-step process for determining disability. *See* 20 C.F.R. § 404.1520. At the first step, the ALJ found that Gilbertson had engaged in substantial gainful activity (SGA) from September 8, 2008, through June of 2009. AR 25. Rather than stop at that step, the ALJ evaluated whether Gilbertson could establish a disability at the remaining steps beginning in June of 2009, when her SGA ended. AR 27. At step two, the ALJ determined that Gilbertson's neck condition relating to her cervical fusion was a severe impairment. *Id.* The ALJ also considered Gilbertson's depression, sleep apnea, swallowing problems, Horner's syndrome, carpal tunnel syndrome, and past alcohol abuse, but determined those were nonsevere impairments. AR 27-29. Based on those findings, the ALJ concluded

4

at step three that Gilbertson did not have an impairment or combination of impairments that met or equaled a listed impairment. AR 29.

Before moving on to step four, the ALJ determined that Gilbertson had the residual functional capacity (RFC) to lift and carry 20 pounds occasionally and 10 pounds frequently; sit as well as stand and/or walk for six hours in a work day with normal breaks; frequently balance but only occasionally climb ladders; climb steps slowly with a handrail; and occasionally stoop, crouch, kneel, and crawl. *Id.* The ALJ also acknowledged that Gilbertson had mild limitations on social functioning and her ability to maintain concentration, persistence, and pace. *Id.* In deciding Gilbertson's RFC, the ALJ found that Gilbertson's subjective complaints of pain were exaggerated and unsupported by medical evidence. *Id.* Based on that RFC and the testimony of a vocational expert, the ALJ determined at step four that Gilbertson could perform her past work as a laboratory technical assistant as generally performed in the national economy. AR 33. Therefore, the ALJ concluded that Gilbertson was not entitled to disability benefits. AR 34.

## STANDARD OF REVIEW

A reviewing court must uphold the Commissioner's decision if it is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g) ("The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive . . . ."); *Teague v. Astrue*, 638 F.3d 611, 614 (8th

Cir. 2011). "Substantial evidence is 'less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.' " *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (quoting *Maresh v. Barnhart*, 438 F.3d 897, 898 (8th Cir. 2006)). "The 'substantial evidence in the record as a whole' standard is not synonymous with the less rigorous 'substantial evidence' standard." *Burress v. Apfel*, 141 F.3d 875, 878 (8th Cir. 1998). " 'Substantial evidence on the record as a whole' . . . requires a more scrutinizing analysis." *Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987) (citation omitted). The court considers evidence that both supports and detracts from the Commissioner's decision. *Moore v. Astrue*, 623 F.3d 599, 605 (8th Cir. 2010). If the Commissioner's decision is supported by substantial evidence in the record as a whole, the court may not reverse it merely because substantial evidence also exists in the record that would support a contrary position or because the court would have determined the case differently. *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)).

In determining whether the Commissioner's decision is supported by substantial evidence in the record as a whole, the court reviews the entire administrative record and considers six factors: (1) the ALJ's credibility determinations; (2) the claimant's vocational factors; (3) medical evidence from treating and consulting physicians; (4) the claimant's subjective complaints

relating to activities and impairments; (5) any third-party corroboration of claimant's impairments; and (6) a vocational expert's testimony based on proper hypothetical questions setting forth the claimant's impairment(s). *Stewart v. Sec'y of Health & Human Servs.*, 957 F.2d 581, 585-86 (8th Cir. 1992) (citing *Cruse v. Bowen*, 867 F.2d 1183, 1184-85 (8th Cir. 1989)).

The court also reviews the Commissioner's decision to determine if an error of law has been committed, which may be a procedural error, the use of an erroneous legal standard, or an incorrect application of the law. *Collins v. Astrue*, 648 F.3d 869, 871 (8th Cir. 2011) (citations omitted). Issues of law are reviewed de novo with deference accorded to the Commissioner's construction of the Social Security Act. *Id.* (citing *Juszczyk v. Astrue*, 542 F.3d 626, 633 (8th Cir. 2008)).

## DISCUSSION

### I.   Step One

Gilbertson argues that the ALJ erred at step one by determining that Gilbertson had engaged in SGA from September 8, 2008, through June of 2009, making her ineligible for benefits up through that time. The Commissioner concedes that the ALJ incorrectly calculated Gilbertson's earnings, and that when correctly calculated, Gilbertson's earnings would place her below the threshold for engaging in SGA. Docket 16 at 19-21. The Commissioner asserts that the ALJ's step one error is nonetheless harmless

because the ALJ still considered evidence from throughout Gilbertson's treatment, and Gilbertson has not shown any prejudice resulting from the error.

If Gilbertson is disabled as she alleges, however, the ALJ's decision to exclude the time between November 6, 2007, and June of 2009 due to a miscalculation of SGA would deny Gilbertson benefits to which she would otherwise be entitled. Furthermore, because of the ALJ's erroneous calculation of SGA during the time period of September 8, 2008, through June, not the first, 2009, the ALJ did not consider this time period in determining whether there has been more than a continuous 12-month period during which the claimant was disabled. Docket 16 at 27. Such an error cannot be considered harmless. On remand, the ALJ should properly apply the rules regarding SGA to Gilbertson's case.[4]

## II.   Step Two

At step two, Gilbertson must establish whether she has a medically determinable physical or mental impairment that is severe. 20 C.F.R. § 404.1520(a)(4)(ii); *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007) ("It is the claimant's burden to establish that [her] impairment or combination of

---

[4] Gilbertson raises the issue of the ALJ's decision not to reopen her previous claim. Docket 10 at 28. In light of this court's ruling on SGA, on remand the ALJ should also reconsider whether Gilbertson could reopen her prior claim without a showing of "good cause." *See* 20 C.F.R. § 404.988(a).

impairments are severe.") (citation omitted). To be considered severe, an impairment must "significantly" limit the claimant's physical or mental ability to do basic work activities, 20 C.F.R. § 404.1521(a), such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, remembering simple instructions, using judgment, responding appropriately to usual work situations, and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b)(1)-(6).

Gilbertson argues that the ALJ incorrectly concluded that her Horner's syndrome was not a severe impairment. Docket 10 at 28-30. The Commissioner contends that step two is merely a screening mechanism, and because the ALJ found a severe impairment at step two and moved on in the sequential process, it was not error to fail to identify an additional severe impairment. Docket 16 at 22.

The Eighth Circuit has held that a failure to correctly identify a severe impairment at step two even though other severe impairments are found at that step is not necessarily harmless. *See Nicola v. Astrue*, 480 F.3d 885, 887 (8th Cir. 2007) ("[W]e reject the Commissioner's argument of harmless error. We are persuaded by Nicola's assertion . . . that the ALJ erred in failing to find that her diagnosis of borderline intellectual functioning was a severe impairment."). Therefore, the court turns to whether the ALJ's decision

9

regarding Gilbertson's visual impairment at step two is supported by

substantial evidence in the record as a whole.

> In assessing Gilbertson's visual impairment at step two, the ALJ stated:
>
> Following the second surgery on September 6, 2006, the claimant reported a drooping left eyelid, a little bit of difficulty focusing, and some headaches. Evaluation by an ophthalmologist on October 4, 2006, resulted in a diagnosis of Horner's syndrome on the left with mil[d] ptosis[5] and miosis.[6] Dr. Hammer concluded this was due to swelling or irritation of the cervical sympathetic chain. It was noted it would be rechecked in one to two months. (Exhibits 3F and 15F, duplicate exhibits)[.]
>
> There is no showing the claimant ever sought treatment for such a condition subsequent to October 4, 2006. She only testified that if she reads more than 20 to 30 minutes, she will get a headache. She will then stop reading and rest. (Testimony)[.] As such, *the undersigned concludes said condition was short-lived* and due to the effects of the [second] surgery on September 6, 2006. If present after June, not the first, 2009, it constitutes a non-severe impairment within the meaning of the Social Security Act as it has no more than a "de minimus," if any, effect on her ability to perform basic work-related activities.

AR 28 (emphasis added). The ALJ did not discuss Dr. Elkins's findings

regarding the severity and permanence of Gilbertson's eye condition.

The ALJ's decision referred to October 4, 2006, the initial date on which

Gilbertson saw Dr. Hammer. AR 483. But the ALJ did not discuss Gilbertson's

follow-up appointments with Dr. Hammer on November 7, 2006; February 7,

---

[5] Ptosis refers to the sinking down or prolapse of an organ, in this case, the superior eyelid. *Stedman's Medical Dictionary* 1600 (28th ed. 2006).

[6] Miosis is a contraction of the pupil. *Stedman's Medical Dictionary* 1214 (28th ed. 2006).

2007; and May 30, 2007. AR 484-87. Following Gilbertson's appointment on May 30, 2007, Dr. Hammer wrote, "I really do not see any changes here and I have not recommended an aggressive work-up at this point. This came from trauma from a cervical neck procedure . . . and it may or may not improve with time." AR 487. Additionally, Gilbertson mentioned visual difficulty numerous times to different medical providers. Most significantly, Dr. Elkins evaluated Gilbertson at the request of Avera McKennan's claims adjuster to determine the severity of Gilbertson's eye impairment. In an impairment rating written on July 11, 2008, Dr. Elkins noted ptosis, asymmetric pupils, and dilation lag consistent with Horner's syndrome. AR 523. Based on his findings, Dr. Elkins assigned a 6 percent whole person permanent impairment for the visual loss alone, and he stated that Gilbertson had reached maximum medical improvement. AR 524. This finding stands in direct contrast to the ALJ's speculation that Gilbertson's visual impairment related to Horner's syndrome was short-lived and de minimus.

The ALJ appears to have concluded that Gilbertson's visual impairment was nonsevere based on a lack of treatment reflected in the record. But the record does reflect follow-up treatment and a finding of partial permanent disability almost two years after the initial diagnosis. Without more explanation by the ALJ regarding the treatment records from Dr. Hammer and the partial permanent disability finding by Dr. Elkins, the court does not know how the

ALJ considered those medical opinions and how much weight the ALJ gave to them. As it stands, the ALJ's conclusion that Gilbertson's visual impairment was short-lived and de minimus is not supported by substantial evidence in the record as a whole.

## III.   RFC

Before an ALJ moves to step four, the ALJ determines the claimant's RFC. 20 C.F.R. § 404.1520(a)(4). A claimant's RFC "is the most [she] can still do [in a work setting] despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). The RFC assessment is an indication of what the claimant can do on a "regular and continuing basis" given the claimant's disability. 20 C.F.R. § 404.1545(b). " 'The ALJ should determine a claimant's RFC based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations.' " *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004)). The RFC must include the limitations from all medically determinable impairments, regardless of whether they are considered severe. SSR 96-8p ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.' "). " '[T]o find that a claimant has the [RFC] to perform a certain type of work, the claimant must have the ability to perform the requisite acts day in and day out, in the sometimes competitive

and stressful conditions in which real people work in the real world.'" *Reed v. Barnhart*, 399 F.3d 917, 923 (8th Cir. 2005) (citing *Thomas v. Sullivan*, 876 F.2d 666, 669 (8th Cir. 1989)).

In concluding that Gilbertson could perform a range of light work with some limitations, the ALJ relied upon the evaluations of the state agency physicians. The ALJ found that Gilbertson's statements about her pain were "exaggerated, generally not credible, and not supported by a preponderance of credible medical opinion and evidence in record." AR 29. Additionally, the ALJ gave little weight to the opinions and records from Dr. Foley because he did not treat Gilbertson for her neck pain. AR 33.

Gilbertson argues that her RFC, as determined by the ALJ, is not supported by substantial evidence in the record as a whole because the ALJ ignored the opinions of Drs. Cho, Johnson,[7] Elkins, and Foley.[8] Separately,

_____

[7] Dr. Johnson's opinion that Gilbertson had a 25 percent impairment rating due to her cervical fusion and her release to "light duty type work" starting at four hours a day does not contradict the ALJ's RFC determination and does not support reversal.

[8] Dr. Foley was not Gilbertson's treating physician for her neck pain. As a result, it is not error for the ALJ to give less weight to the opinion of Dr. Foley. *See Reed v. Barnhart*, 399 F.3d 917, 922 (8th Cir. 2005) (lack of relevant treatment history constitutes "good reason to give less weight to the opinion of the treating physician). Additionally, the ALJ was not under a duty to recontact Dr. Foley to clarify his conclusions because Dr. Foley had already stated in his cover letter that he was not a specialist in this area and that Drs. Ripperda and Cho would be better positioned to address the issues. The duty to recontact treating physicians does not extend to all circumstances. *See Hacker v. Barnhart*, 459 F.3d 934, 938 (8th Cir. 2006) (articulating that the requirement

Gilbertson argues that the ALJ did not properly assess Gilbertson's credibility with respect to her subjective complaints of pain, ignored corroborating third-party statements, and incorrectly concluded that Gilbertson was motivated by a desire to obtain a large workers's compensation settlement.

### A.    Medical Opinions

#### 1.    Dr. Cho

Dr. Cho performed a functional capacities evaluation of Gilbertson on September 22, 2005. During the evaluation, Dr. Cho found that Gilbertson was able to occasionally lift 16-30 pounds at waist level and frequently lift 8-15 pounds; could occasionally bilaterally carry 11-20 pounds and frequently carry 6-10 pounds; could occasionally stand statically but frequently sit and continuously stand/walk; could occasionally kneel, bend, climb stairs and ladders; could frequently balance; could rarely reach overhead but could occasionally reach far horizontally and frequently reach close horizontally; could at least frequently perform all types of manipulation except firm grasp; and could only occasionally rotate. *See* AR 850.

Dr. Whittle, a state agency physician, performed two evaluations of Gilbertson. In the first, dated November 5, 2007, Dr. Whittle found that Gilbertson could occasionally lift 20 pounds and frequently lift 10 pounds; could frequently stand/walk; could frequently sit; could frequently climb stairs

---

to recontact physicians is not universal).

but never climb ladders; could occasionally balance, stoop, crouch, and crawl, and frequently kneel; was limited in reaching all directions, particularly overhead; and was unlimited in other types of manipulation. AR 500-07. In his second evaluation, dated April 18, 2009, Dr. Whittle assessed numerous different postural limitations and found that Gilbertson had no manipulative limitations, including reaching overhead. AR 657-64.

In the RFC determination, the ALJ gave great weight to Dr. Whittle's second assessment, without discussing its contradictions with the treating physician, Dr. Cho's, assessment and Dr. Whittle's first assessment. Because Dr. Cho's assessment and Dr. Whittle's first assessment largely corroborate each other, and both contradict the evaluation relied upon by the ALJ with respect to postural and manipulative limitations, the ALJ committed reversible error by not giving reasons for relying on Dr. Whittle's second opinion and disregarding the other two opinions.

### 2.    Dr. Elkins

Gilbertson argues that the ALJ's RFC discussion does not mention any visual limitations, including the assessment by Dr. Elkins. Docket 10 at 36. The Commissioner contends that the ALJ properly discounted Gilbertson's subjective complaints of vision impairment. Docket 16 at 34-35. But the ALJ's entire discussion of Gilbertson's visual impairment is found in two paragraphs of the ALJ's step two decision. *See* AR 28. Even if Gilbertson's limitations

15

stemming from her Horner's syndrome were nonsevere, they still must be incorporated in formulating her RFC. *See* SSR 96-8p, at *5. The ALJ's failure to consider the impact of Gilbertson's visual impairment, whether severe or nonsevere, constitutes reversible error. *See Washington v. Shalala*, 37 F.3d 1437, 1440 (10th Cir. 1994) ("We note at the outset that the ALJ failed to consider plaintiff's vision loss in conducting the step four inquiry. This failure, alone, would be grounds for reversal."). This is particularly true in this case, where the ALJ found that Gilbertson could perform her past relevant work as a laboratory technician as it is generally performed. AR 33, 351. That position requires frequent near visual acuity, U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993 ed.), Pt. A, § 02.04.02, and generally involves the "coordinated movement of hands, eyes, and fingers to use delicate and sensitive equipment . . . ." *Id.* § 02.04. Because the ALJ stopped his analysis after determining that Gilbertson was capable of performing her past relevant work as a laboratory technical assistant without considering the impact of Gilbertson's visual impairment, the ALJ committed reversible error.

**B.    Credibility**

"[W]hen evaluating a claimant's credibility, in addition to considering the absence of objective medical evidence to support complaints of pain, an ALJ should consider a claimant's reported daily activities, the duration, frequency

and intensity of his or her pain, precipitating and aggravating factors, medication, and functional restrictions." *Steed v. Astrue*, 524 F.3d 872, 875 n.4 (8th Cir. 2008) (citing *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984)); *see* 20 C.F.R. § 404.1529(c)(3). "The ALJ is not required to discuss methodically each *Polaski* consideration, so long as [the ALJ] acknowledged and examined those considerations before discounting [Gilbertson's] subjective complaints." *Steed*, 524 F.3d at 876 (internal quotation omitted). An ALJ must make express credibility determinations detailing reasons for discounting a claimant's subjective complaints of pain. *Dipple v. Astrue*, 601 F.3d 833, 837 (8th Cir. 2010). An ALJ's credibility determination is entitled to deference because the ALJ is in a better position than a reviewing court to gauge credibility. *Travis v. Astrue*, 477 F.3d 1037, 1042 (8th Cir. 2007).

Gilbertson argues that the ALJ's conclusion regarding her motivation to receive a large workers' compensation settlement is not supported by substantial evidence in the record as a whole. Additionally, Gilbertson contends that the ALJ improperly discounted corroborating third-party statements.

### 1.   Gilbertson's Credibility

The ALJ concluded, in part, that Gilbertson was not being honest about her pain in an effort to obtain a larger workers' compensation settlement so she could pay for her gender reassignment surgery. AR 32. This is largely based on

17

the facts that Gilbertson filed a workers' compensation claim, that she pursued gender reassignment surgery, and that she made statements to Dr. Thomas Price, a psychologist, that she might be retiring and she was anticipating a settlement which would allow her to undergo some gender transition procedures. AR 32; AR 950.

Based on Gilbertson's two statements as recorded by Dr. Price, the ALJ concluded that Gilbertson engaged in a years-long effort of falsely reporting pain to mislead her doctors and physical therapists, benefit from a larger workers' compensation settlement, and use those proceeds to fund her gender reassignment surgery. But Gilbertson started the transition procedures in approximately March of 2008, AR 665, and the statements made to Dr. Price were made on December 4, 2008, both well after she began to report significant pain, which was in 2005. Gilbertson has been through two neck surgeries, suffered nerve damage as a complication from the second surgery, endured epidural block treatment, and taken multiple narcotic pain medications. Furthermore, numerous medical providers documented instances in which Gilbertson expressed a desire to return to work as soon as possible. *See, e.g.*, AR 417 (reporting Gilbertson expressed frustration at not being able to go back to work); AR 418 (observing that one of Gilbertson's stated goals was to go back to work); AR 421-22 (noting that Gilbertson was going to ask Dr. Ripperda when she would be able to return to work); AR 609 ("Overall [Gilbertson] seems

18

very interested in continuing to come to physical therapy to try and improved [sic] h[er] overall condition and eager to increase h[er] function . . . ."); AR 611 ("[Gilbertson] has been tearful throughout our time together discussing h[er] losses and limitations. . . . [Sh]e laments on what [s]he could do wanting to go back to a job where [s]he enjoyed everyday work . . . ."); AR 613 ("[Sh]e feels like [s]he is the kind of person that has gone 150 mph and always benefited [sic] from good hard work.").

Gilbertson has a long history of hard work both in the Army and in private employment. Numerous providers noted Gilbertson's desire to return to work. Based on the evidence in the record, the ALJ's conclusion that Gilbertson was deliberately lying about her pain for years to bolster her workers' compensation position is not supported by substantial evidence in the record as a whole. This finding of Gilbertson's motivation is intertwined with the rest of the ALJ's credibility determination. On remand, the ALJ should reevaluate to what extent Gilbertson's subjective complaints of pain are credible based on all the evidence in the record.

### 2.     Third-Party Statements

Gilbertson also argues that the ALJ did not consider the third-party evidence submitted by Gilbertson's mother, daughter, and coworkers in determining Gilbertson's RFC. Docket 10 at 37. The Commissioner must consider statements from other persons when evaluating the intensity and

persistence of a claimant's symptoms, including pain. *See* 20 C.F.R. § 404.1529(c). The affidavits in question corroborate Gilbertson's activities of daily living and her subjective complaints of pain. See AR 352-54 (affidavit of Lucille Gilbertson); AR 357-60 (affidavit of Amanda Gilbertson); AR 365-66 (affidavit of Audrey Herzog); AR 368-69 (affidavit of Kathleen Buchholz); AR 371-72 (affidavit of Lois Sudbeck).

When corroborative evidence from lay witnesses would be discredited by the same evidence that discredits a claimant's own testimony, the failure of an ALJ to separately discuss the corroborating lay witness testimony has no bearing on the outcome. *See Lorenzen v. Chater*, 71 F.3d 316, 319 (8th Cir. 1995) (citing *Robinson v. Sullivan*, 956 F.2d 836, 841 (8th Cir. 1992)). But because the court is remanding for reconsideration of Gilbertson's credibility, the ALJ should consider the third-party statements in the manner set forth in 20 C.F.R. § 404.1529(c), and base the credibility finding on all the relevant evidence in the record as a whole.

## CONCLUSION

The ALJ's decision is not supported by substantial evidence at step one, step two, the RFC determination, or Gilbertson's credibility. Because further development on those issues is needed, remand is appropriate. On remand, the ALJ should consider whether Gilbertson's visual limitations constitute a severe impairment. The ALJ should also incorporate those limitations, severe or

nonsevere, into Gilbertson's RFC. Additionally, when determining Gilbertson's RFC, the ALJ should explain the weight given to medical opinions, including the opinion of Dr. Cho and Dr. Whittle's first assessment. The ALJ should reassess Gilbertson's credibility based on all the evidence in the record. Finally, the ALJ should determine when Gilbertson began not engaging in SGA and determine whether there has been more than a continuous 12-month period from that point forward during which Gilbertson was disabled. Accordingly, it is

ORDERED that the Commissioner's decision denying Gilbertson's claim for disability insurance benefits is reversed and remanded for further proceedings.

Dated February 27, 2014.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE

21